## Case No. 5,388.

### Ex parte GIBERSON.

[4 Cranch, C. C. 503.] [1]

Circuit Court, District of Columbia. March Term, 1835.

ATTORNEY AND CLIENT—FIDELITY OF ATTORNEY.

Fidelity to his client is one of the first requisites in the character of an honorable, practitioner at the bar. That fidelity requires that he should maintain all the just rights of his client; but it extends no further. It will not justify any attempt to evade the fair operation

[1] [Reported by Hon. William Cranch, Chief Judge.]

of the law or to impede the administration of justice. A fault on either side of the true line of honorable professional conduct will equally meet the decided reprehension of the court.

In the case of Thornton v. Davis [Case No. 13,998], which was a petition for freedom, upon a motion for attachment against the defendant for disobeying an injunction, H. B. Robinson and Madison Jeffers, two of the constables of this county, having been charged, in argument, by Mr. Brent, with assisting the defendant in violating the injunction, were permitted to speak in their own justification; and, among other things, stated facts implicating the purity of the professional character of G. L. Giberson. Whereupon Mr. Key, district attorney, filed certain allegations against him, and obtained a rule to show cause why he should not be dismissed from the bar, or be otherwise dealt with as to the court should seem proper.

Upon the hearing, Mr. Robinson, Mr. Dandridge, and Mr. Jeffers were examined as witnesses in support of the rule; and Mr. B. K. Morsell, Mr. Brice, Mr. W. L. Brent, and Mr. Smallwood, against it.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The substance of the charge stated in this rule against Mr. Giberson, is infidelity to his client; a charge, if true, of the gravest import, and which would deserve severe reprehension from the court. The specifications, in effect, are: 1st. That Mr. Giberson, after filing a petition for freedom for his client, and obtaining a subpoena and injunction to the master to prevent him from taking the petitioner out of the jurisdiction of this court; and believing that such was the intention of the master if he could find the petitioner; and knowing that Robinson and Jeffers were employed by the master to take him for that purpose; and knowing that the subpoena had been served on the master, instructed them that they might lawfully take him and deliver him to the said Davis. 2d. That he assented to a proposition made by the said Robinson and Jeffers, or one of them, to receive twenty-five dollars in case the petitioner was found and apprehended. 3d. That he promised them that if the petitioner came to his office he would give them notice so that he might be apprehended.

1. The bill which Mr. Giberson filed for an injunction is sufficient evidence that he believed that Mr. Davis intended to remove the petitioner out of the jurisdiction of this court, if he could take him, notwithstanding the subpoena which had been served upon him to answer the petition for freedom. It seems also to be proved that he knew that Robinson and Jeffers were employed by Davis to take the petitioner for that purpose; or, at least, to discover where he was, so that Davis might take him. It seems also to be proved, by the testimony of Robinson and Jeffers, that he told them that as the injunction had not been served there was no danger on their part in apprehending him, or taking him up. This opinion, so far as it regards the danger arising from a violation of the injunction, was, perhaps, just; but he ought to have informed them further, that an injunction had been granted, although not served; and that if they, knowing that it had been issued, and that a subpoena to answer the petition had been served, should proceed to apprehend and deliver the petitioner to Mr. Davis, with a view to prevent the effect of the injunction, or to deprive the petitioner of the benefit of his suit, they would be guilty, if not of a contempt of court, yet of a misdemeanor for which they might be punished. If they had no reason to believe that Davis intended to take the petitioner away from the jurisdiction of this court, so as to deprive him of the benefit of his suit, their apprehending him as a runaway slave, and delivering him to his master would not be unlawful, even if they knew of the service of the subpoena and injunction; for the master is still entitled to the possession of the negro until his freedom shall be established, upon complying with the rules of the court. The omission of Mr. Giberson to give Robinson and Jeffers the additional caution which the case seemed to require, may have been the effect of a misapprehension of the law, or an imperfect view of the whole case; and will not justify us in saying that it proceeded from infidelity to his client, or any other corrupt motive.

2. The second specification is, that he assented to a proposition to receive twenty-five dollars in case the petitioner should be found and apprehended. Mr. Giberson's assent to this proposition, is not proved by any positive evidence of the fact. Mr. Robinson and Mr. Jeffers, however, were suffered by him to go away in the belief that he would give the information they wanted, and would take the bribe; but Mr. Giberson did not give them the necessary information, although it seems, from Mr. B. K. Morsell's testimony, that he possessed it. On the contrary, it is proved by Mr. Morsell and Mr. W. L. Brent, that he mentioned to them the offer and expressed great indignation that it should have been made. Mr. Morsell also testifies that Mr. Giberson gave the petitioner notice that Robinson and Jeffers were seeking for him to deliver him up to Mr. Davis, and cautioned him against exposing himself. Mr. Giberson, believing it to be the intention of Mr. Davis to carry the petitioner out of the jurisdiction of this court, notwithstanding the subpoena and injunction, might have deemed it his duty to deceive Robinson and Jeffers with a view to give notice to the petitioner. The petitioner was, in fact, taken and carried out of this district by Davis, but not by Robinson and Jeffers, nor does it appear to have been through any information furnished by them, or by Mr. Giberson. We must, therefore, acquit him of this part of the charge.

3. The third specification is, that he promised that if the petitioner came to his office, he would give Robinson and Jeffers notice, that he might be apprehended. It appears, by their testimony, that Mr. Giberson did promise them that if the petitioner came to his office he would let them know it. But it also appears, by the testimony of Mr. Morsell and Mr. Brent, that he cautioned the petitioner against Robinson and Jeffers, and against coming to his office. His subsequent conduct, when pressed to dismiss the suit, upon receiving the costs, appears to have been perfectly correct; and he expressed great indignation against Robinson and Jeffers when he supposed they had assisted Mr. Davis in carrying the petitioner beyond the jurisdiction of the court, as appears by his letter to Mr. Robinson.

Upon the whole, we must acquit Mr. Giberson of any intentional infidelity to his client; but we think he ought to have informed Robinson and Jeffers of the danger they would incur by assisting Mr. Davis in removing the petitioner from the jurisdiction of this court, after notice or knowledge of his having filed his petition; and that he ought to have repelled promptly, and with indignation, the unjustifiable offer of the twenty-five dollars. His not having done so, has cast a shade of suspicion over the transaction. Fidelity to his client is one of the first requisites in the character of an honorable practitioner at the bar. That fidelity requires that he should maintain all the just rights of his client; but it extends no further. It will not justify any attempt to evade the fair operation of the law, or to impede the administration of justice. A fault on either side of the true line of honorable professional conduct, will equally meet the decided reprehension of the court. The rule, in this case, may be discharged; but we hope it will induce all concerned, (the officers of justice as well as the member of the bar upon whom it was laid,) to reflect upon, and fix in their minds the true honorable standard of official as well as professional practice.